## HENRY *v.* CROOM.

## Opinion delivered March 27, 1897.

ASSIGNMENT FOR BENEFIT OF CREDITORS—WHAT CONSTITUTES.—An insolvent merchant sold his stock of goods to his creditor, and directed the latter to sell certain cotton in his possession, agreeing that the proceeds of the cotton should be applied toward the payment of his debt, and that any balance due the creditor should be credited on the price of the stock of goods, and that if any balance remained to the credit of the debtor, it should be paid to other creditors, as specified. *Held*, that the transaction did not constitute an assignment for the benefit of creditors.

Appeal from Pope Circuit Court.

JEREMIAH G. WALLACE, Judge.

### STATEMENT BY THE COURT.

This is an action in replevin brought in the Pope circuit court by appellee, John A. Croom, against Silas A. Henry, as sheriff, to recover a stock of goods, wares and merchandise. The circumstances out of which the action arose are as follows: Henry and Walter Croom were engaged in a mercantile business at Atkins, Pope county, Arkansas, under the firm name of Croom & Bro. They became indebted to the Ball Warren Commission Company of St. Louis to the extent of about seven thousand dollars. Being unable to obtain a further extension of credit, they on the 3d of December, 1894, sold out their stock of goods to said commission company for the consideration of 60 cents on the dollar of the cost price of said goods with freight added. The commission company, two days afterwards, sold the stock of goods to John A. Croom, a brother of Walter and Henry Croom, but who had no business connection with the firm of Croom & Bro. Soon afterwards the stock of goods was levied upon by the sheriff under an

attachment sued out by the Jerome Hill Cotton Company against the members of the firm of Croom & Bro., and this action was brought by John A. Croom to recover the goods. The case was submitted to a court without a jury. Upon the trial, the bill of sale given by Croom & Bro. to the Ball Warren Commission Company was read in evidence, the same being in words as follows: "For value received, and in consideration of a debt due to the Ball Warren Commission Company of St. Louis, Mo., we hereby bargain, grant and sell and convey to the said Ball Warren Commission Company all the stock of goods, wares, merchandise, fixtures and other property now in the store houses occupied by us in the town of Atkins, Pope county, Arkansas, in which we have been carrying on a general merchandise business, which said stock of goods, wares, etc., are to be inventoried by said Ball Warren Commission Company at cost and estimated freight added, and is sold to them at 60 per cent. of said inventory. Witness our hands and seals this third day of December, 1894, at Atkins, Ark.

(Signed)                          "CROOM BROS.

"H. W. CROOM.

"W. R. CROOM."

At the time of this sale of the stock of goods, the Ball Warren Commission Company had in their possession 177 bales of cotton belonging to Croom & Bro., which had been previously shipped to them by Croom & Bro. The evidence tended to show that, at the time the commission company purchased the stock of goods, it was agreed with Croom & Bro. that this cotton should be sold by the commission company, and the proceeds applied to the credit of Croom & Bro. on their debt due the company, and that the balance due the company should be paid from the money due Croom & Bro. for the stock of goods. It was also agreed that, if any balance remained to the credit of Croom & Bro. after

the payment of their debt to the commission company, it was to be applied, first, to the payment of certain named creditors of Croom & Bro. If there was still a balance after the payment of these creditors, it was to be paid to the other creditors of Croom & Bro.

The evidence further showed that the price paid by the commission company for the stock of goods was a fair one, and the full value of the goods. After the proceeds of the cotton and the stock of goods had been placed to the credit of Croom & Bro., there remained a balance of $542 due from the commission company to Croom & Bro. The finding of the circuit court was in favor of plaintiff, John A. Croom, and judgment was rendered accordingly.

*James B. McDonough,* for appellant; *Davis & Son* and *J. E. Joyner* of counsel.

(1) The sale of the goods was a part of a scheme to defraud creditors. 50 Ark. 314; 57 *id.* 614.

(2) The transaction was an assignment and void. 4 Thomps. on Corp. secs. 4875, 4955, 5028; 38 N. E. Rep. 20; 52 Ark. 41; 53 *id.* 105; 54 *id.* 6, 234, 428; 59 *id.* 275; Tiedeman, Sales, sec. 93, and note; Burrill, Assignments, sec. 4, and cases. If there was a *trustee,* and if there was a disposition of property to *him* to raise a fund to pay debts, the transaction was an assignment. 52 Ark. 30; 53 *id.* 101; 52 *id.* 49; 54 *id.* 6; *ib.* 229, 428; 18 S. W. Rep. 55; 55 *id.* 579; 58 *id.* 295; 59 *id.* 470; 60 *id.* 160; Burrill, Assignments, sec. 4; 167 Mo. 11; 19 Ore. 251; 82 Ga. 1; 5 Ohio St. 218; 10 Wis. 386; 65 N. W. Rep. 494.

*Bullock & Hart* for appellee.

1. There was no fraudulent scheme. 60 Ark. 432; 56 *id.* 414.

2. The transaction was a sale, and not an assignment. 53 Ark. 105; 59 *id.* 271; 54 *id.* 235; 39 *id.* 571;

56 *id.* 314; 33 S. W. Rep. 636; 31 Mo. 301; 39 N. W. Rep. 769.

RIDDICK, J., (after stating the facts.) The first contention is that the sale of the stock of goods in question was a part of a scheme for the purpose of defrauding the creditors of Croom & Bro., and that both John A. Croom and the Ball Warren Commission Company by its agent advised and participated in such fraud. But the finding of the circuit court was against this contention. The court found that the sale was made in good faith, and that the price paid was the full value of the goods. Without discussing the evidence, we need only say that in our opinion it was sufficient to support the finding of the court. *Robson* v. *Tomlinson*, 54 Ark. 229.

The next contention is that this sale of the stock of goods was, in effect, an assignment for the benefit of creditors, and void for non-compliance with our statute regulating assignments. The contention on this point is that the agreement that the commission company should sell the cotton, and pay the proceeds on the debt of Croom & Bro., and that the balance due the company should be paid out of money due for purchase price of stock of goods; that this agreement, when taken in connection with the further agreement that if any balance due Croom & Bro. was left after payment of the debt due the commission company, it should be paid to creditors of Croom & Bro., makes the transaction an assignment for the benefit of creditors. But with this contention we are not able to agree. The fact that the consideration of a sale is to be applied in part to the payment of other debts than that of the vendee does not necessarily render the transaction an assignment for the benefit of creditors. A brief consideration of the facts of this case will show that this transfer of goods was not an assignment, within the meaning of our statute regulating

voluntary assignments for the benefit of credit-
ors. First, as to the cotton which Croom & Bro.
directed the commission company to sell, and apply
the proceeds in part payment of their indebtedness
to such company: We consider it altogether imma-
terial whether this direction to sell the cotton was
given by Croom & Bro. at the time they shipped the
cotton, as the circuit court found to be the fact, or, as
counsel for appellant contend, given later at the time of
the sale of the stock of goods. While the evidence
seems to support the finding of the court on this point,
we regard it as a matter of no moment, for this direction
in reference to the cotton cannot constitute an assign-
ment, for the reason that there was never any transfer
of the title to the cotton by Croom & Bro. to the com-
mission company. An assignment is a transfer of prop-
erty to a trustee to be disposed of by him to raise a fund
to pay debts. In an assignment the assignor parts, not
only with possession, but with the title to the property.
*Goodbar* v. *Locke*, 56 Ark. 315. But in this case there
was no transfer of their title to the cotton by Croom &
Bro. The cotton was held by the commission company
as the cotton factor and agent of Croom & Bro., and
was sold and transferred by them as the agent of Croom
& Bro. The direction to their agent to sell the cotton
was not a transfer of the title to the cotton. The trans-
fer of this cotton by Croom & Bro. was not to the Ball
Warren Commission Company, but to the purchaser
from such company. The title to the cotton remained
in Croom & Bro. up to the time of the sale by the com-
mission company, and could have been levied upon by
the creditors of Croom & Bro., subject of course to any
valid lien held by the commission company. It would be
going much too far to hold that an insolvent merchant
could not direct his cotton factor to sell cotton, and
apply the proceeds upon his debt without making an

assignment; for authority given to one as the agent of another to sell property and apply the proceeds does not constitute an assignment. *Wood* v. *Adler-Goldman Com. Co.*, 59 Ark. 270; *Banning* v. *Sibley*, 3 Minn. 389; *Beans* v. *Bullitt*, 57 Pa. St. 221; Burrill on Assignments (6th Ed.), sec. 5.

Second, as to the stock of goods: It was not transferred to the commission company to be held in trust and disposed of to raise a fund to pay debts, but was sold to the company for a stipulated price. It is true, the total amount to be paid was not agreed upon at the time the bill of sale was executed, but, as "that is certain which can be made certain," the agreement to pay 60 per cent. of the invoice price of the goods was in effect the same as if the total price had been named, for it could be ascertained by calculation. The commission company did not take the goods as a trustee, but as an absolute owner by purchase. Now, if we should conclude that the agreement made by the commission company that it would apply the purchase price, first, to the payment of the amount due it, and, if any balance remained due Croom & Bro., would pay that to the other creditors of Croom & Bro., constituted, in effect, an assignment of such balance for the benefit of creditors, that would not necessarily affect the sale of the goods. In the absence of fraud, it would be only an assignment of this surplus arising from the proceeds of the sale, and would not affect a sale made in good faith and for a valuable consideration.

But the evidence in this case shows that the Ball Warren Commission Company did not hold this money in trust for the creditors of Croom & Bro., but as agent for Croom & Bro. This balance was placed to the credit of Croom & Bro. upon the books of the commission company. The fact that the company was required to pay this balance to the creditors of Croom & Bro. did

not constitute an assignment of such balance to the company, but was only a direction as to the mode of payment. After this direction was given, the money still remained the property of Croom & Bro. until actually paid out by the company, and the circuit court correctly held that the facts in proof did not show an assignment. *Flask* v. *Tindall*, 39 Ark. 571; *Becker* v. *Rardin,*, 107 Mo. 111; *Green & Button Co.* v. *Remington*, 72 Wis. 648; *Johnson* v. *McGrew*, 11 Iowa, 151; Burrill on Assignments (6th Ed.), page 10, and cases cited in note 3.

There were other points argued by counsel, but as they were mostly disputed questions of fact, which were settled by the findings of the circuit court, we deem it unnecessary to discuss them. Being of the opinion that, on the whole case, the judgment is right, it is affirmed.

Wood, J., being absent, did not participate.